## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION
## CIVIL ACTION NO. 5:15-CV-00130-TBR

JOHN STOKLEY,                                 Plaintiff,

v.

CHRISTIAN COUNTY JAIL, *et al.*,              Defendants.

### MEMORANDUM OPINION

John Stokley, a state inmate proceeding *pro se*, filed this action against the Christian County Jail, Jailer Brad Boyd, Chief Deputy Jailer Steve Howard, and Deputy Jailer Chris Zander, as well as Advanced Correctional Healthcare, Inc., Supervising Physician Charles Paulius, and Supervising Nurse Jane Doe. He brings an Eighth Amendment claim for inadequate medical care in addition to common-law claims for intentional infliction of emotional distress and medical negligence. With discovery closed, the jailers and medical staff move for summary judgment. Because there are no genuine disputes of material fact, judgment as a matter of law is appropriate. Accordingly, the Jailers' Motion for Summary Judgment, [R. 25], along with the Medical Staff's Motion for Summary Judgment, [R. 26], are **GRANTED**.

### I.

### A.

During the period of time relevant to this action, John Stokley, a state inmate, was incarcerated at the Christian County Jail in Christian County, Kentucky. [R. 1-1 at 10, ¶¶ 3–4 (Complaint).] On the evening of May 6, 2014, Deputy Jailer Chris Zander gave John Stokley a 75mg dose of Effexor, which had been prescribed for a different inmate, in error. [*See* R. 26-3 at 1 (Medication Error Form).] Sometime after Deputy Jailer Zander

noticed that mistake, he returned to Stokley's cell and gave him a 200mg dose of Wellbutrin as the doctor had, in fact, ordered.  [R. 1-1 at 12, ¶ 12.]  Later on that evening, Stokley says, he became "extremely dizzy and disoriented," symptoms he attributes to the medication mishap.  [*See* R. 26-3 at 1; R. 26-4 at 1 (Sick Call Request Form).]  He fell that night and struck the left side of his jaw on a shelf adjacent to his bed.  [*See* R. 26-4 at 1.]

Six days after the medication error occurred, Stokley complained of jaw pain, [*see id.*], and Supervising Nurse Lindsay Harper of Advanced Correctional Healthcare, Inc. examined him,[1] [*see* R. 26-5 at 1 (Medical Progress Note); R. 26-12 at 4, ¶ 15 (Jane Doe's Responses to First Set of Interrogatories).]  Nurse Harper noticed bruising and swelling on Stokley's jawline and notified Dr. Charles Paulius.  [*See* R. 26-5 at 1.]  Dr. Paulius, in turn, ordered an x-ray of Stokley's jaw, which Dr. Dan Wunder performed that same day.  [R. 26-6 at 1 (First X-Ray).]  The x-ray indicated nothing out of the ordinary.  [*Id.*]

After Stokley continued to complain of jaw pain, jail medical staff prescribed him a 500mg dose of Tylenol twice daily for five days.  [*See* R. 26-7 at 1 (Sick Call Request Form).]  Stokley refused to take that medication, however, on at least two occasions. [*See* R. 26-8 at 1 (Refusal of Treatment Form); R. 26-9 at 1 (Refusal of Treatment Form).]  He requested to see Dr. Paulius on May 22.  [R. 26-9 at 1 (Sick Call Request Form).]  Dr. Paulius examined Stokley on May 27 and not only prescribed Stokley a 800mg dose of Motrin twice daily for ten days, but also ordered a second x-ray of Stokley's jawline.  [R. 26-10 at 1 (Medical Progress Note).]  Again, the x-ray indicated

---

[1] The Christian County Fiscal Court has contracted with Advanced Correctional Healthcare, Inc. to provide medical care to inmates at the Christian County Jail.

nothing out of the ordinary.  [R. 26-11 at 1 (Second X-Ray).]  Roughly two weeks later, Stokley was transferred to a different facility.  [R. 1-1 at 17, ¶ 25.]

**B.**

Stokley filed this action in Christian Circuit Court against the Christian County Jail,[2] Jailer Brad Boyd, Chief Deputy Jailer Steve Howard, and Deputy Jailer Zander, along with Advanced Correctional Healthcare, Inc., Dr. Paulius, and Supervising Nurse Jane Doe[3] on May 11, 2015, [*see id.* at 9–12, ¶¶ 2, 5–11], bringing an Eighth Amendment claim for inadequate medical care, as well as common-law claims for intentional infliction of emotional distress and medical negligence, [*id.* at 19–21, ¶¶ 31–41.] Pursuant to 28 U.S.C. § 1441(a), the jailers and medical staff removed that action, [*see* R. 1 at 1–4, ¶¶ 1–6 (Notice of Removal)], and the Court subsequently denied Stokley's motion to remand, [*see* R. 11 at 5 (Memorandum Opinion)].  With discovery now closed, the jailers and medical staff move for summary judgment.  [*See* R. 25 at 1 (Jailers' Motion for Summary Judgment); R. 26 at 1 (Medical Staff's Motion for Summary Judgment).]  Stokley opposes those motions.[4]  [*See* R. 30 at 4–12 (Response).]

---

[2] The Christian County Jail is not a legal entity.  Instead, it is a facility owned and operated by Christian County, Kentucky.

[3] During discovery, Jane Doe was identified as Supervising Nurse Lindsay Harper, but John Stokley never moved to amend his complaint to reflect that fact.

[4] Before discussing the merits of the motions for summary judgment, the Court must first address a few procedural issues.  In the main, Stokley has filed two self-titled "responses" to the outstanding motions for summary judgment.  Upon closer examination, the first of these is, in fact, a motion for an extension of time to file a responsive brief.  [*See* R. 27 at 1 (Motion for Extension of Time).]  Construing it as such, the Court will **GRANT** that request.  Stokley's response is, therefore, timely.  [*See* R. 30 (Response to Motions for Summary Judgment)], and the motions to strike that response, [*see* R. 31 (Jailers' Motion to Strike); R. 32 (Medical Staff's Motion to Strike)], are **DENIED**.

To the extent that Stokley seeks a further extension, [*see, e.g.*, R. 30 at 4], however, such relief is unwarranted.  On two prior occasions, this Court afforded Stokley additional time to complete discovery.  [*See* R. 19 at 1–2 (Order of October 12, 2015); R. 24 at 1–2 (Order of February 1, 2016).]  Stokley was warned that no more extensions would be forthcoming.  Consequently, Stokley's informal request for additional time to further respond to the outstanding motions for summary judgment is **DENIED**.

## II.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the parties moving for summary judgment, the jailers and medical staff must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Stokley's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the jailers and medical staff satisfy their burden of production, Stokley "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### III.

The jailers and medical staff move for summary judgment on Stokley's Eighth Amendment claim for inadequate medical treatment, as well as his common-law claims for intentional infliction of emotional distress and medical negligence. [*See* R. 25-1 at 3–8 (Jailers' Memorandum in Support); R. 26-2 at 3–10 (Medical Staff's Memorandum in Support).] The Court will address the substance of each claim in turn. Ultimately, none merit relief, and judgment for the jailers and medical staff is appropriate as a matter of law.

### A.

"The Eighth Amendment prohibits the imposition of 'cruel and unusual punishments' upon prisoners." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting U.S. Const. amend. VIII). In order to establish liability under the Eighth Amendment for a claim based on a failure to provide adequate medical care, an inmate must demonstrate that correctional officers acted, or failed to act, with "deliberate indifference" to the inmate's serious medical needs. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). The concept of "deliberate indifference" encompasses both an objective and a subjective component. To satisfy the objective component, an inmate must show "the existence of a 'sufficiently serious' medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires an inmate to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.

5

2001) (citing *Farmer*, 511 U.S. at 837). The latter requirement is "meant to prevent the constitutionalization of medical malpractice claims," and so an inmate must "show more than negligence or misdiagnosis of an ailment" before liability attaches. *Id.* (citing *Farmer*, 511 U.S. at 835; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Analyzing Stokley's claim against Deputy Jailer Zander for dispensing the wrong medication, [*see* R. 1-1 at 19, ¶¶ 33–34], under that framework, it fails as a matter of law. As discussed above, the subjective component of an Eighth Amendment claim is "meant to prevent the constitutionalization of medical malpractice claims." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 835; *Estelle*, 429 U.S. at 106). In this case, the record contains no evidence to suggest that Deputy Jailer Zander's incorrect administration of Effexor was anything other than negligent. "It thus constituted medical malpractice at most and cannot constitute an Eighth-Amendment violation." *Barnett v. Luttrell*, 414 F. App'x 784, 788 (6th Cir. 2011) (citing *Dominguez*, 555 F.3d at 550). Summary judgment on that claim is, therefore, warranted. *See Dumas v. Ducatt*, No. 12-15262, 2013 WL 1340698, at *2–4 (E.D. Mich. Apr. 3, 2013).

Stokley's claim against Advanced Correctional Healthcare, Inc., Dr. Paulius, and Nurse Doe for providing inadequate medical treatment after his fall, [*see* R. 1-1 at 20–21, ¶¶ 36–39, 41], fares no better. Even assuming Stokley's jaw injury rises to the level of an "objectively serious medical need," the record does not indicate that any of the jail's medical professionals acted with a sufficiently culpable state of mind for liability to attach. It is undisputed that Stokley was seen by Nurse Harper on the same day he complained of experiencing jaw pain. [*See* R. 26-4 at 1; R. 26-5 at 1.] Over the course of the next fifteen days, Dr. Paulius examined Stokley, prescribed him two regimens of

6

pain medicine, and ordered two x-rays of his jawline.  [*See* R. 26-6 at 1; R. 26-7 at 1; R. 26-10 at 1; R. 26-11 at 1.]  Stokley's "disagreement with and dispute over the diagnosis and treatment he received" is insufficient to show "deliberate indifference" on the part of Advanced Correctional Healthcare, Inc., Dr. Paulius, or Nurse Doe.  *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  Accordingly, summary judgment in favor of Advanced Correctional Healthcare, Inc., Dr. Paulius, and Nurse Doe as to Stokley's Eighth Amendment claim is appropriate too.

## B.

Next, Stokley's claim for intentional infliction of emotional distress, also known as outrage, [*see* R. 1-1 at 20, ¶ 40], falls short of the mark.  In order to establish a common-law claim for intentional infliction of emotional distress,

> [1] the wrongdoer's conduct must be intentional or reckless; [2] the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; [3] there must be a causal connection between the wrongdoer's conduct and the emotional distress; and [4] the emotional distress must be severe.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004), *abrogated on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014), *as corrected* (Ky. Apr. 7, 2015), *and reh'g denied* (Ky. May 14, 2015); *see also Childers v. Geile*, 367 S.W.3d 576, 579 (Ky. 2012).  The Court must decide, as to the second element, "whether the conduct complained of can reasonably be regarded to be so extreme and outrageous as to permit recovery" unless reasonable minds could differ on the subject.  *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 544 (Ky. Ct. App. 2013) (quoting *Goebel v. Arnett*, 259 S.W.3d 489, 493 (Ky. Ct. App. 2007)).  The bar is set high, for, under Kentucky law, "a claim for the tort of outrage requires the plaintiff to prove

7

conduct which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hume v. Quickway Transp., Inc.*, No. 3:16-cv-00078-JHM, 2016 WL 3349334, at *9 (W.D. Ky. June 15, 2016) (quoting *Futrell v. Douglas Autotech Corp.*, No. 5:09-CV-21, 2010 WL 1417779, at *4 (W.D. Ky. Apr. 2, 2010)); *see also Mineer v. Williams*, 82 F. Supp. 2d 702, 706 (E.D. Ky. 2000) ("The standards for this tort are strict.").

Even when viewed in the light most favorable to him, Stokley has identified no "outrageous and intolerable" conduct approaching that threshold.  He merely alleges that the actions of the jailers and medical staff "caused [him] emotional distress."  [R. 1-1 at 20, ¶ 40.]  A bare allegation of that sort falls far short of anything rising to the level of extreme and outrageous conduct as Kentucky defines that concept.  *See Stringer*, 151 S.W.3d at 789–91 (listing examples of actionable and nonactionable conduct); Restatement (Second) of Torts § 46 cmts. d to f (Am. Law Inst. 1977) (same).  Therefore, Stokley's claim for intentional infliction of emotional distress fails as a matter of law.

## C.

Last but not least, Stokley's assorted negligence claims are unavailing too.  To state a claim for negligence, Kentucky law requires "proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury."  *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003)).  In a medical negligence case, such as this one, "proof of

causation requires the testimony of an expert witness."[5]  *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991).  In the absence of expert testimony on that element, "summary judgment is proper."  *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006) (citing *Turner v. Reynolds*, 559 S.W.2d 740, 741–42 (Ky. Ct. App. 1977)).

Here, Stokley's various negligence claims are of the kind discussed above.  For example, Stokley alleges that Deputy Jailer Zander negligently dispensed the wrong medication to him, ultimately causing his jaw injury.  [*See* R. 1-1 at 19, ¶¶ 32–34.] However, Stokley has come forward with no competent expert medical proof to establish causation between the alleged breach (administration of the incorrect medicine) and claimed damages (the injury to his jaw).  The same holds true for Stokley's other theories of negligence.  [*See id.* at 19–20, ¶¶ 33–34, 36.]  Consequently, summary judgment as to Stokley's final claim is warranted as well.  *See Romines v. Walkup*, No. 1:08-CV-179, 2010 WL 411475, at *4 (W.D. Ky. Jan. 29, 2010).

## IV.

John Stokley's Motion for Extension of Time, [R. 27], is **GRANTED**; the Christian County Jail, Jailer Brad Boyd, Chief Deputy Jailer Steve Howard, and Deputy Jailer Chris Zander's Motion to Strike, [R. 31], and Advanced Correctional Healthcare, Inc., Supervising Physician Charles Paulius, and Supervising Nurse Jane Doe's Motion to Strike, [R. 32], are **DENIED**; and the Christian County Jail, Jailer Brad Boyd, Chief

---

[5] To that general principle, Kentucky law recognizes two exceptions.  First, expert medical testimony is not required if the circumstances are such that "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been prior skill and care," such as when a "surgeon leaves a foreign object in the body."  *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006) (quoting *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992)).  Second, a plaintiff need not come forward with his own expert when an otherwise qualified witness lays "a sufficient foundation for *res ipsa loquitur* on more complex matters," such as, for example, where a doctor "makes admissions of a technical character from which one could infer" negligence.  *Id.* at 170–71 (quoting *Perkins*, 828 S.W.2d at 655).  The facts of this case, however, fit neither exception.

Deputy Jailer Steve Howard, and Deputy Jailer Chris Zander's Motion for Summary

Judgment, [R. 25], and Advanced Correctional Healthcare, Inc., Supervising Physician

Charles Paulius, and Supervising Nurse Jane Doe's Motion for Summary Judgment, [R.

26], are **GRANTED**.

A separate order and judgment shall issue.

Date:

cc:     Counsel of Record
        Plaintiff, *pro se*

10